```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
```

CA'DARUS JOHNSON,

    Plaintiff,

v.                           Case No. 8:21-cv-2010-VMC-SPF

WILDERLY MAURICETTE d/b/a
MAURICETTE PICTURES,

   Defendant.
_____/

## ORDER

This matter comes before the Court pursuant to Plaintiff Ca'darus Johnson's Motion for Default Judgment (Doc. #34), which was filed on December 17, 2021. For the reasons that follow, the Court grants the Motion.

### I.   Factual Background

Ca'darus Johnson is the sole author and copyright holder for the script *Monopoly Money*, held under copyright registration number PAU 4-078-997. (Doc. # 1-2 at 2). After developing the script in 2014, Johnson approached Defendant Wilderly Mauricette to co-develop the script into a motion picture. (Doc. # 1 at ¶¶ 14-16). Johnson's involvement was critical to the venture as he retained "ultimate approval over each aspect of the film that was produced." (Id. at ¶¶

1

14-15). Mauricette later became dissatisfied with Johnson's management of the production, and in March 2021, he informed Johnson that he would continue developing the film without Johnson's approval from then on. (Id. at ¶ 17).

In March and April 2021, Johnson explicitly revoked Mauricette's permission to work on the *Monopoly Money* production in any capacity. (Id. at ¶ 19). Johnson further instructed Mauricette to refrain from reproducing, distributing, or publicly performing the contents of the script. (Id.). Mauricette nonetheless continued developing the *Monopoly Money* production without Johnson's input or approval. (Id. at ¶ 20). Mauricette ultimately completed a derivative work of Johnson's script, titled *Monopoly Money The Movie*, and premiered the film to a Manatee County audience on August 21, 2021. (Doc. # 7-3).[1]

Johnson sent Mauricette a cease-and-desist letter on August 4, 2021 (Doc. # 1-2), yet Mauricette released the film on August 21, 2021. (Doc. # 7-3 at ¶ 6). After this action commenced, and after he had been served with both the complaint and Plaintiff's motion for preliminary injunction,

---

[1] Mauricette secured billboards and produced t-shirts promoting *Monopoly Money The Movie*. (Doc. # 1-3). He too promoted the release of the film through Facebook and Eventbrite, an online ticket sales website. (Id.).

Mauricette continued to promote the film for a secondary screening scheduled for September 11, 2021. (Id. at 7-9). Further, Mauricette ultimately released the film online through a company called Byte Column. (Id. at ¶ 7). Finally, in promoting the September 11, 2021 screening, Mauricette suggested that he would be taking the *Monopoly Money The Movie* on tour in different cities. (Id. at 6-9).

## II. Procedural History

On August 20, 2021, Johnson initiated this action seeking damages and injunctive relief from Mauricette, a resident of Manatee County, Florida. (Doc. # 1). Johnson served Mauricette on August 25, 2021. (Doc. # 5). He also filed a Motion for Preliminary Injunction on September 7, 2021 (Doc. # 7), which was served on Mauricette the following day. (Doc. # 9).

Mauricette was granted extensions to respond to the complaint on September 28 and October 15, 2021. (Doc. ## 13, 20). Yet, a review of the record reflects that no such response has been filed to date. Johnson applied for entry of Clerk's default against Mauricette on November 10, 2021. (Doc. # 27). The Clerk entered default against Mauricette on November 12, 2021. (Doc. # 28).

The motion for preliminary injunction (Doc. # 7) was referred to United States Magistrate Judge Sean P. Flynn (Doc. # 8), who held a hearing on the motion on November 15, 2021. (Doc. # 29). Mauricette did not appear for the hearing. (Id.). Judge Flynn then issued a report and recommendation on December 9, 2021 (Doc. # 32), wherein he recommended that the motion for preliminary injunction be granted. (Id.). This Court adopted the report and recommendation and granted the motion on January 3, 2022. (Doc. # 36).

Johnson filed the instant Motion for Default Judgment on December 17, 2021. (Doc. # 34).

### III. Legal Standard

District courts may enter default judgments against defendants who fail to plead or otherwise defend actions brought against them. Fed. R. Civ. P. 55(a); Cobbler Nev., LLC v. Woodard, No. 8:15-cv-2652-VMC-AEP, 2016 WL 3126504, at *2 (M.D. Fla. June 3, 2016) (citing DirectTV v. Griffin, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003)). The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. See Tyco Fire & Sec. LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, the Court must ensure that

there is a sufficient basis in the pleadings for the judgment to be entered. Id. A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact and bars the defendant from contesting those facts on appeal. Id.

For a judgment of default to be entered, Johnson must allege sufficient facts to support a finding of Mauricette's liability. While factual allegations are taken as true in issuing a default judgment, legal conclusions are not. See Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005) ("[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit . . . conclusions of law"). A court must "examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to a default judgment." Cobbler Nev., 2016 WL 3126504, at *2. (internal citations omitted).

The standard used to determine the sufficiency of the factual allegations pled is "akin to that necessary to survive a motion to dismiss for failure to state a claim." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam). To survive a motion to dismiss, the plaintiff's complaint must allege "enough facts to state a

claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). For default judgment to be issued, the facially plausible facts alleged in the complaint must satisfy all the elements of the offenses charged. Cobbler Nev., 2016 WL 3126504, at *2.

"Once liability is established, the court turns to the issue of relief." Enpat, Inc. v. Budnic, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings,' and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." Id. (citing Fed. R. Civ. P. 55(b)(2)).

**IV. Liability**

To establish a prima facie case of copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). To satisfy the first element, "a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities." Bateman v. Mnemonics, Inc., 79 F.3d

6

1532, 1541 (11th Cir. 1995) (quoting Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995)). "[A] certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Certificates of registration obtained more than five years after completion or publication of the work do not earn the presumption of validity; instead, the certificate's evidentiary weight "shall be within the discretion of the court." Id.

Because the Clerk has entered default against Mauricette (Doc. # 28), this Court deems Mauricette to have admitted to Johnson's well-pled factual allegations. Regarding the first element, Johnson holds the copyright registration for *Monopoly Money*; the "Completion/Publication" field shows that Johnson completed the script in 2014 but does not assert a publication date. (Doc. # 1-2 at 2). The certificate of registration has an effective date of February 28, 2021 (Id.), which falls outside the safe-harbor period to earn the presumption of a valid copyright. 17 U.S.C. § 410(c). Nonetheless, Mauricette has not challenged or rebutted the validity of Johnson's copyright. Thus, the Court is persuaded

7

that Johnson has sufficiently shown that he possesses a valid copyright for *Monopoly Money* to satisfy the first element.

To meet the second element, a plaintiff must show that the "alleged infringer actually copied plaintiff's copyrighted material." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010). "To qualify for copyright protection, a work must be original to the author." Feist Publ'ns, 499 U.S. at 345. "Original, as the term is used in copyright, means only that the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity." Id.

Johnson has alleged that he was the sole author of the *Monopoly Money* script, and that Mauricette's derivative reproduces the content of the script verbatim. (Doc. # 1 at ¶¶ 2, 10-13, 21). Because factual allegations are taken as true for the purposes of determining liability in default, this Court finds Johnson has successfully satisfied the second element necessary to prove copyright infringement. See Malibu Media, LLC v. Danford, No. 2:14-cv-511-SPC-CM, 2015 WL 2238210, at *2 (M.D. Fla. May 12, 2015) ("Upon review of the operative complaint, the Court is satisfied Malibu Media has properly alleged a claim for direct copyright infringement.

8

That is, Malibu Media has established it owns valid copyrights and alleged its original works were copied by Danford.").

## V. Relief Requested

Because liability has been established, the Court must next determine damages. Cobbler Nev., 2016 WL 3126504, at *3. 17 U.S.C. §§ 503-505 enumerates the types of remedies that may be awarded for violations of the Copyright Act. Johnson specifically requests statutory damages, injunctive relief, attorney's fees, and costs. (Doc. # 34 at 1-2).

### A. Statutory Damages

First, Johnson seeks $14,500.00 in statutory damages pursuant to 17 U.S.C. § 504(c). (Id. at 11). The statute prescribes that statutory damages are for a "sum of not less than $750 or more than $30,000 as the Court considers just." 17 U.S.C. § 504(c)(1). The Court may increase the maximum damages awarded up to $150,000 should it find that a defendant willfully infringed on the copyright. 17 U.S.C. § 504(c)(2). "Willfully, in the context of section 504(c)(2), means that the defendant knows his actions constitute an infringement." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 852 (11th Cir. 1990) (internal citations omitted).

Courts possess "wide latitude in determining the amount of statutory damages within the given statutory range." UMG

Recordings, Inc. v. Rogue, No. 08-21259-CIV, 2008 WL 2844022, at *2 (S.D. Fla. July 23, 2008). In determining damages, a court considers:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Cobbler Nev., 2016 WL 3126504, at * 4 (internal citations omitted); see also St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1205 (11th Cir. 2009) (stating that in calculating damages for willful infringement "deterrence of future violations is a legitimate consideration" (internal citations omitted)). Courts within the Eleventh Circuit have routinely found three-times multipliers of actual damages appropriate where a defendant willfully violated a plaintiff's copyright. See, e.g., Reiffer v. World Views, LLC, No. 6:20-cv-786-RBD-GJK, 2021 WL 1269247, at *5 (M.D. Fla. Mar. 1, 2021) (collecting cases), report and recommendation adopted, 2021 WL 1264249 (M.D. Fla. Apr. 6, 2021); Bait Prods. Pty. Ltd. v. Murray, No. 8:13-cv-169-VMC-AEP, 2013 WL 4506408, at *6 (M.D. Fla. Aug. 23, 2013).

10

Here, Johnson requests an award of $14,500.00 — a figure just short of three times the $4,836.00 that Mauricette earned through selling tickets for the derivative film. (Doc. # 34 at 11-12). He calculates that Mauricette sold at least 93 general admission tickets for *Monopoly Money The Movie*'s August 21, 2021 screening, and each ticket sold for $52.00. See generally (Doc. # 34-1). In light of Mauricette's willful and continued promotion and screening of the derivative film, even continuing after suit had been filed, the Court finds that the requested statutory damages of $14,500.00 are appropriate. Reiffer, 2021 WL 1269247, at *5.

**B. Injunction**

Next, Johnson seeks a permanent injunction enjoining Mauricette from further violating his copyright. (Doc. # 1 at ¶ 31(a)). Under 17 U.S.C. § 502(a), this Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the

11

> plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, LLC., 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." Id.

This Court finds that Johnson's well-pled allegations merit injunctive relief. The complaint, taken with Mauricette's default, establishes that Johnson has suffered irreparable injury. See Virgin Recs. Am., Inc. v. Courson, No. 3:07-cv-195-VMC-MCR, 2007 WL 3012372, at *2 (M.D. Fla. Oct. 12, 2007) ("Copyright infringements are presumed to cause irreparable harm." (internal citations omitted)). Monetary damages alone are inadequate to compensate for the infringement. Compelling Mauricette to disgorge profits made by screenings of the derivative film does not protect Johnson from further infringements. See Bait Prods., 2013 WL 5653357, at *5 ("[D]ue to the possibility of future infringement of the Motion Picture by Aguilar and others, monetary damages alone are inadequate to compensate Bait Productions for any injury it has sustained or will possibly sustain in the future.").

12

Without injunctive relief, Johnson suggests that he would be unable to develop and commercialize his script without others associating his film with Mauricette's derivative. (Doc. # 7-3 at ¶ 9). Johnson's loss of reputation and goodwill further support the issuance of a permanent injunction. See Chanel, Inc. v. Besumart.com, 240 F. Supp. 3d 1283, 1290-91 (S.D. Fla. 2016) ("An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace."). Lastly, there is no evidence a permanent injunction would be unduly burdensome on Mauricette or disserve the public interest. See Chanel, 240 F. Supp. 3d at 1290-91 ("By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act.").

For the reasons detailed herein, this Court grants Johnson's request for a permanent injunction enjoining Mauricette from infringing his copyright in *Monopoly Money*.

### C. Attorney's Fees

Under 17 U.S.C. § 505, the Court, in its discretion, may award reasonable attorney's fees and costs incurred in

litigating the case. "In copyright cases, although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." Arista Recs., Inc. v. Beker Enters., Inc., 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003) (internal citations omitted).

While the Court determines that Johnson is entitled to attorney's fees for this action under 17 U.S.C. § 505, no evidence or documentation in support of a specific fee amount has been provided to date. Pursuant to Middle District of Florida Local Rule 7.01(c), Johnson shall file a supplemental motion in support of a fee award within forty-five days of the entry of this Order.

### D. Costs

Finally, Johnson seeks $530.00 for costs incurred in bringing this litigation: $400.00 for the filing fee and $130.00 for personally serving both the initial process and the motion for preliminary injunction on Mauricette. (Doc. # 34 at 13-14). 17 U.S.C. § 505 allows for the "recovery of full costs by or against any party other than the United States or an officer thereof." "Costs" are explicitly enumerated under 28 U.S.C. § 1920, and encompass all expenses

14

sought by Johnson in this case. Thus, the Court will award $530.00 in costs.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff's Motion for Default Judgment (Doc. # 34) is **GRANTED** as set forth herein.

(2) The Clerk is directed to enter a default judgment against Defendant Wilderly Mauricette and in favor of Plaintiff Ca'darus Johnson in the amount of $15,030.00.

(3) Johnson's request for permanent injunction against Mauricette is **GRANTED**. Mauricette, his agents, servants, employees, affiliated entities, and all of those in active concert with them, are enjoined from directly or indirectly infringing on Johnson's rights in the *Monopoly Money* script. This encompasses using the internet to reproduce or copy, distribute, or make the *Monopoly Money* script or derivatives thereof available for distribution to the public absent lawful license or express permission by Johnson.

(4) The Court finds that Plaintiff is entitled to reasonable attorney's fees. Pursuant to Middle District of Florida Local Rule 7.01(c), Plaintiff must file a supplemental

motion on the amount of attorney's fees **within 45 days of this Order**.

(3) Upon entry of Judgment, the Clerk is directed to **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of January, 2022.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE